The Honorable, the Judges, and the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez. All Circuits have any manner of formal business before the Honorable. The United States Court of Appeals for the 4th Circuit are admonished to draw a mat and give their attention, for the Court is now sitting, God Save the United States, in its Honorable Court. Mr. Hughes, you ready? Mr. Chief Judge, Your Honors, and may it please the Court. Matthew Hughes on behalf of Donald Melvin, who asks this Court to reverse, vacate his sentence, and remain for a new sentencing without the ACCA enhancement. This Court should do so following Hodge and Winbush, which held that the government forever forfeits ACCA predicates that it fails to timely raise. This Court should not follow Dix and Rumley, which were wrongly decided in conflict with Hodge and Winbush, and failed to deal with the bulk of those cases' reasoning. But first, Your Honors, the appeal waiver is a threshold issue, so I'll turn to it first. And here again, ironically, the government has forfeited this argument by failing to raise it in a timely manner. No court has said, this Court certainly has not said, even in an unpublished opinion, that the government cannot raise the appeal waiver in its first substantive response. The government's first substantive response was Docket Number 25, a motion for summary affirmance, where the government specifically argued the merits. This was a Rule 27 motion. Correct. You know, the local rule, Rule 27, provides that a motion to dismiss has to be made within the time provided. I just want to make sure I got the right case. Correct. So we think that because the government filed its first substantive response without raising the appeal waiver issue, despite knowing that the argument made in Mr. Melvin's first merits brief in this case fell squarely within the appeal waiver, the government has forfeited that argument. But that's not the only reason why the appeal waiver doesn't apply here. We believe that the exception for unknown future government misconduct applies here as well. Mr. Melvin could not have known, and did not know at the time he entered his plea, that the government would later violate Hodge during sentencing. And that constitutes government misconduct. We raised this in our briefing on the motion to dismiss, and the government has not contested that what it did in trying to circumvent Hodge did in fact constitute government misconduct. So there's also your client filed a Pro Se Anders brief, maybe that was counsel, and the government responded with another substantive motion but without invoking the appeal waiver. Is that also a grounds to negate the invocation of the appeal waiver? We think so, Your Honor. And this goes back to the Ashford case. We also cited the unpublished Strong, Surratt, and Myers cases. The best case for the government is, I believe it's the Strong case. In that case, the government was permitted to raise the appeal waiver because it didn't raise, it hadn't filed anything until its first substantive response was due in response to the Anders brief. But here, the government filed a substantive response without invoking it. Correct. Either one. And then just briefly on the appeal waiver, we also believe this fits the firmly established constitutional right exception that this court has recognized even when an appeal waiver would otherwise apply. But turning to the merits, we believe this case falls squarely within Hodge. And we just have to be candid and admit that we think that Dix and Rumley were wrongly decided and that this court should not follow them. Dix and Rumley failed to deal with the bulk of Hodge's rationale. Hodge was not just about notice and opportunity to respond, and not just about the fact that the burden of proof shifts on collateral review. Hodge was about much more. Hodge said that there were other concerns that should prevent the government from raising tardy PSR objections without good cause, especially when the consequences are so great as an ACCA-enhanced sentence. One of those reasons is that it prevents sandbagging. If the government thinks it gets a redo, it can hold ACCA predicates in its back pocket and pull them out later only once it has lost. A rule allowing the government to raise new objections in this case would also encourage lax advocacy, which, relatedly, as Hodge pointed out, does not help the district court conduct sentencing based on accurate pre-sentence reports. Now, there's a tension here. And the rules, the procedural rules that allow for forfeiture and waiver and that require both parties to follow an orderly schedule of providing their objections to the court to the other side, balance accuracy and efficiency. If accuracy is elevated above all else, nobody would ever get sentenced. But if efficiency was prized above all else, then we would suffer too much inaccuracy. A rule that requires the government to submit its objections timely or to have good cause for its failure to do so is a rule that encourages accurate sentencing and accurate pre-sentence reports. If people think they get a redo, they're less likely to be thorough the first time around. So, in addition, this is perhaps the most important point about Hodge. Hodge said it's just not fair to hold the defendant's feet to the fire and not do the same for the government. We cited in our brief several examples of cases where district courts in this circuit have refused on re-sentencing to allow defendants to raise arguments they reasonably should have raised earlier. And then this court has affirmed that decision by those district courts. The government should be held to the same standard. And that's what Hodge said. Hodge said we see no reason to hold the government to a different standard. Yes, sir, a collateral review case. So we're here on direct appeal. Correct. And your client got notice and a continuance on a new PSR. Isn't that notice and the opportunity to be heard that wasn't present in Hodge? It was present in all these other cases? It's not the notice that Hodge said he's entitled to. True, it is a form of notice and it's a form of opportunity to respond. But it hasn't been sentenced yet, right? That's right. But the government's premise is that a re-sentencing fixes everything. That's their premise, that if you just re-sentence Mr. Melvin here or Mr. Rumley and Rumley, Dix in the Dix case, if you just do a re-sentencing, then the defendant has notice and an opportunity to respond. But the same is true in Hodge. On collateral review, the defendant had notice and an opportunity to respond at the district court before Hodge went up to the Fourth Circuit. And the Hodge court said that's not enough. That's not the kind of notice he was entitled to. So just because you can do a re-sentencing, whether before you ever get to a 2255 stage or after you've gotten relief on 2255, the fact remains you haven't got the notice that Rule 32, that the rule requiring objections within a timely manner requires both the defendant and the government to provide. And not just that, but regardless, you still have the sandbagging concern. You still have the lax advocacy. Frankly, the government in this case should have known that there were additional ACCA predicates and should have raised them. It failed to do so. It kept it in its back pocket and pulled it out for later. And that's a Hodge concern. And that's, again, I do want to emphasize this very clearly. Dix and Rumley did not deal with that issue. Dix and Rumley said Hodge is only about the shifted burden of proof and notice and an opportunity to respond. First, the notice and opportunity to respond identified in Hodge is timely notice, which we didn't have here. And second, the government failed to timely notify the defendant. Now, yes, he had an opportunity to go back and consider this objection, and then there was a new sentencing. But that just falls into another of the Hodge due process concerns, which is that the government gets to implicitly tell the defendant. I thought he had not been sentenced at all. Mr. Melvin has been sentenced. I know. But when this issue came up, had he been sentenced at that time? No, sir. So, but nonetheless, you know, it's just another redo. It's another one of these arguments that a redo makes everything okay. But Hodge said that when the government – Why can't you redo something that hasn't happened? I take your point, Your Honor, that in a sense it's not technically a complete redo because the sentence hasn't been issued, but it's another shot at the sentencing hearing with brand new objections. And, again, this is a situation where the government was allowed to implicitly tell the defendant, don't worry about all these potential active predicates. We're not relying on them. Hodge said that's a due process problem. It allowed the government to stand back. It allowed the government to be lax in its advocacy. Those are concerns identified in Hodge that Dix didn't deal with, that Rumley didn't deal with. And, yes, this is not a collateral review case. Rumley was not a collateral review case, or Dix was not. Rumley was a collateral review case, but Dix was not. And it's fair for the government to point out, as I'm sure they will, that that is technically a distinguishing factor. But as this Court has pointed out over and over again in Gibbons v. Gibbs in 2024 and Taylor in 2019 and in U.S. v. Brooks in 2008, panel opinions don't just apply on their facts. They establish rationales for their decisions. And a later panel can't just reject underlying rationales for a decision and say, well, it's a little bit different over here. As this Court said in Gibbons v. Gibbs, quote, the rule that one panel cannot overrule another would be weak tea indeed if all the later panel had to do was identify a fact, a theory, or an argument that a previous panel did not address. And Dix and Rumley just simply did not deal with these additional due process concerns that were raised and addressed in Hodge. I do want to point out Winbush. Winbush is an important case because it takes the Hodge rationale and it puts beyond dispute that the appropriate remedy is a remand for a resentencing without the enhancement. That's in a published opinion that predates Dix and it predates Rumley. And it completely contradicts the government's argument that if you just do it all over again and the defendant gets another chance to object to these brand new ACCA predicates, that that fixes the problem. So that's our argument on those points. I do want to point out several other cases that followed Hodge. Hodge and Winbush don't stand alone. This Court applied Hodge in the Benton decision, in the Cornett decision, in the Almawakal decision, and in several other decisions. So we just contend that Hodge and Winbush are the previous controlling presidents. They've never been overruled by an en banc panel of the en banc court or the Supreme Court of the United States. And their rationale is controlling. If there are no further questions, I'll reserve the rest of my time for rebuttal, if I may, or stand on my five minutes. Yeah, you'll stand on your five minutes. Thank you. Mr. Hughes, thank you. Thank you. Counsel, Ms. Roberts. May it please the Court, Tory Roberts on behalf of the United States. Defendant Donald Melvin validly waived his right to appeal his sentence, and this Court should hold him to that bargain. I'd like to begin with the point regarding the timely invocation of the appeal waiver here. The government invoked the appeal waiver within the time for the filing of their response brief with respect to the one and only operative opening brief that's at issue in this appeal. Melvin previously filed a different opening brief, and the government responded to that with a motion for summary affirmance. I think as the fact that we're here today arguing this case with an appeal waiver shows, invoking an appeal waiver is not always the most expeditious and efficient way to resolve an appeal. And here Melvin was raising an argument in those earlier briefs that was squarely foreclosed by Supreme Court precedent. So the government thought the most expeditious way to resolve the appeal and get the benefit that it had bargained for with the appeal waiver was to file a motion for summary affirmance. Mr. Melvin then decided he wanted to scrap his prior appeal, get new counsel, and begin his appeal anew. This Court granted Melvin's motion to strike his prior briefs and allowed him to start his appeal over. It would be profoundly unfair if Mr. Melvin was permitted to completely change the nature of the arguments he was raising, but the government wasn't permitted to change the nature of its response. What was the Anders brief, I think, that came in between those two? So the Anders brief that was raised, that was filed, after that his defense counsel then filed. And the government moved for summary dismissal. Excuse me, I'm sorry. Government moved for summary dismissal of that. In response to the Anders brief, I believe actually what happened was that then his counsel filed a brief as well, I think. And then his counsel, excuse me, he filed the Anders brief. The government allowed him to file a counsel brief with respect to the impact of Ehrlinger. And in response to that, his counsel said, you know, there's no non-frivolous Ehrlinger claim, and that's when the government filed the motion for summary affirmance. But the government asked that it be summarily dismissed under the rule and did not invoke the appeal waiver. I thought we had cases that said if the government chooses to respond to an Anders brief, that that starts their clock. But I think those cases are distinguishable because there it was, the Anders brief was filed, and then the government, you know, responded, and then the case continued on based on that Anders brief. Here, the prior briefs that were filed have been completely wiped out, and he is beginning his appeal anew. And so what Rule 27 says is that the government needs to file a motion on procedural grounds. But you all, that puts you all on notice at that point that he's challenging this ACCA. Even though it changed somewhat as to what he was, I guess, particularly challenging, but you're on notice that there is a challenge. Yes. Yes, that's right. Again, the time that he filed those briefs was prior to this court's decision in Lubkin, which made clear that an appeal waiver challenging an ACCA enhancement doesn't fall within the miscarriage of justice exception for a sentence that's outside, you know, the bounds of a legal sentence. And so I think, you know, at that time when he filed those briefs, defendants had argued, oh, if I'm challenging an ACCA enhanced sentence, that falls within the miscarriage of justice exception. Lubkin, after the fact, made clear that that is not the case. But I think the government, you know, understanding that invoking the appeal waiver might encourage and invite more litigation, that the best way to resolve the appeal based on the specific claims that Mr. Melvin was raising was to file a motion for summary affirmance. Moving on to the other aspects of the questions regarding the enforceability of the appeal waiver, if the court does decide that the invocation of the waiver was timely here, if you review the plea colloquy, the district court amply notified Mr. Melvin that he was waiving his right to appeal his conviction and sentence. And that's at JA62, where Mr. Melvin confirmed that he understood the terms of the plea agreement, the fact that he was potentially subject to the ACCA enhanced sentence, and that he was agreeing to waive his right to appeal that sentence. At that time, he knew what the government was challenging in terms of the prior convictions, too, right? He did not. So at the time of the plea colloquy, the PSR had not yet been prepared. So certainly in plea discussions, the parties had had discussions that was under the impression that he would be subject to the ACCA enhanced sentence. But the PSR had not been prepared yet that identified the specific convictions that were at issue. So certainly if Mr. Melvin wanted to bargain with the government for the ability to raise certain challenges to his sentence, depending on what happened at a future sentencing, he could have done that. And you could have put in everything you had that would justify enhancements, too, right? Prior convictions. The government could have. At the time of the plea colloquy? Yeah. You could have put it in, right? We could have, but we were not required to do so at the time of the plea colloquy. The defendant is entitled to the notice and the opportunity to respond with respect to those prior convictions prior to being sentenced. And that was upheld by the procedure here. So the government was not required to identify the specific prior convictions at the time of the plea colloquy in order for the appeal waiver to be valid. But between that time and before the sentencing hearing date, you knew, right? Yes, that's right. And unless there's any further questions on the appeal waiver, I'm happy to turn to the merits of the Hodge issue. I think that's kind of what your questions are getting at. So here, the governing standard is Rule 32. The government was permitted to raise an untimely objection. And then it was within the district court's discretion to decide how to respond to that. But 32F says you have for good cause. What good cause did you all give at the time of the hearing? Sure. So the government explained at the time of the hearing that based on the objection that was raised to the PSR, the government didn't fully understand the nature of the objections that Mr. Melvin was raising. Recall that the PSR initially had four predicate convictions that were identified. As this court said in Rumley, it would have been unnecessary for the government to identify it. This case is different than Rumley because in Rumley, there's this whole discussion about that the government didn't know at the time. You all knew about the ACCA cases and what didn't apply and what would apply. Sure. So the governing standard here is did the district court abuse its discretion in granting the continuance? This court has said that the good cause standard is committed to the discretion of the district court. But I think there has to be some type of finding as to at least say what's the good cause. I don't know based on what my reading of it, what was your good cause other than it sounds like you all made a mistake. So the government explained that it didn't fully understand and didn't think it needed to identify another predicate because the specific challenges that were raised with respect to Mr. Melvin's 1989 and 1990 New York State convictions, there had been Second Circuit cases finding that those types of convictions were valid predicates. When Mr. Melvin filed his sentencing memo one week in advance of the sentencing, he identified additional cases from SDNY that cast doubt on that because they looked at the specific categorical match about the definition of controlled substances. And so if you look at the sentencing hearing, the government explained once we saw that and he identified those additional cases, we then came prepared to the sentencing hearing. But that was in his objections. That was not in his objections to the PSR. That was identified for the first time in his sentencing memo that was filed one week in advance of the sentencing hearing. But the government did not respond at that time. So the government sentencing memo would have been due on the same day as the defendants, one week in advance of the sentencing hearing. You're right that the government did not file a sentencing memo. But the district court said in response to the government's explanation of we are raising this new predicate, but in order for it to be considered, Mr. Melvin would need a continuance and an opportunity to respond. I understand the continuance and the notice and opportunity to respond. My concern is, is 32F a good cause? I still haven't heard a reason that any good cause was given other than that you all made a mistake. So the district court's discussion with the government, the district court said, I want to make sure I get this right and granted the continuance. So the district court said, understanding that you didn't raise this earlier because the nature of the objection wasn't quite clear, they granted the continuance. I acknowledge that the phrase good cause was not used, but I think you need to look at the context of the back and forth between the government defense counsel and the district court, and it's clear there that the district court was giving credence to the government's explanation of we did not raise this as a timely objection to the PSR, but now that the circumstances of the sentencing have changed, we want to bring this additional conviction to your attention. Because you lost, right? That's why you brought it to attention, because you thought what you had was enough. But when one was rejected and you didn't have what you needed, that's when you wanted that, isn't it? But again, that's within... Isn't that right? You can admit that. Sure, yes. I think that the government is going to excuse you, excuse for not raising that appeal waiver. Well, it was something else that made it a little difficult. We didn't do that. Now we excuse this. I mean, that's what the Constitution does. I mean, the Bill of Rights talks about all the defendant's things and the Fourth and Sixth Amendment and all those things, and right to counsel. But now we're supposed to excuse the government for everything. And I've been here over 25 years, and as Mr. Hughes said, I mean, many times when on the other side of the defendant misses, sometimes God and I are crossing the T. Oh, I'm sorry. You didn't do it on time, too. I'm sorry it's too late. But now we're supposed to excuse you for a litany of things. You lost. That's what it was. And you held it back. That's what... And I know it's hard very well, I think. Of course I know that, Judge Gerger, yes. I knew that very well. That's where the sandbag part... Well, let me see. I got... I have four arrows here. I'm going to use these three. And then I figure out one of the files, and that's not good. Well, let's have it continue, because I left one at home that I didn't put in the quiver. That's really what this is about, isn't it? You didn't. You, as Judge Benham said, you made a mistake. But I think that the rules allow for that. Those mistakes ought to be due to the benefit of the defendant. That's what the whole constitutional principles are in terms of that sense. So the fact that Mr. Melvin received notice and the opportunity to respond, you're referencing the Constitution. There was no due process violation with the fact of the way that he received his notice and opportunity to respond here. I know it. There's no Constitution about it. You're absolutely right. You fall on that. But that's the whole point, though, is that the same thing happened, like I said before. It would be no problem with you if you would give a defendant who made a mistake a chance to do over. You would have them do the same. We don't do that, because it's timely, and time is important in the process. And you shouldn't get a – should you get another bite of the apple just because you lost and you calculated incorrectly? You calculated incorrectly on whether or not you should have raised the appeal waiver, all of those things. And now, you know, it's kind of a spilt milk type argument you're making for the defendant. So the cases that defendant cites in reply about the fact that a defendant is foreclosed from raising an untimely objection, Benton and Ashley, those cases are about district court discretion. So it was not that the defendant was completely foreclosed from raising it. It was within the district court's discretion to decide whether to allow a defendant to raise something that they did not raise previously. That's the same standard that applied here. The district court could have decided, you know what, government, you did not raise this previously. We're here for the sentencing, and we're going to proceed without the ACCA enhancement. The district court, in its discretion, decided not to do that. But the court did that without you putting forth a cause. So I don't want to repeat the same thing that I've been saying. But I think if you look at the back of the court. I don't think you have an answer. You didn't have a cause, did you? The cause was that based on seeing that there were four predicates identified in the PSR, the government did not think it needed to identify another unnecessary predicate. And that based on the objections that were raised and the probation office's response in the PSR, the government thought that those predicates were valid. Does that prevent you all from, I mean, you're not limited in the number of predicate offenses that you could list. I mean, that you could use, right? That's correct. Okay, so you could have initially used all four. So there were four. We could have listed five. You could have listed five. Yes, you could have listed five. And I'm looking at the JA. You all already knew, if you look at JA111 through 12, that they were, that these original objections were there. So if you look at JA111. I guess what I'm asking, when you went in that day, you all already knew that they were objecting to these other two predicates. Yes. I do not dispute that we knew that they were objecting to the predicates. What I was trying to explain is that the government at JA110 said, 110 to 114, in that discussion that you were referencing, said, based on the initial predicates and the nature of the objection that was raised, the government didn't really fully understand the objection that the defendant was making. Recall, these are New York State convictions. It's out of circuit. And there had been Second Circuit decisions that seemed to say that those were valid predicates. But the defendant, in his sentencing memo that was filed a week in advance of the sentencing hearing, identified some additional SDNY cases that the government then looked at and realized, okay, maybe there is an issue with this predicate. So that was the explanation, was that certainly, yes, the government was on notice that the defendant was objecting to three of the four predicates that were identified, but that the government didn't fully understand the nature of the objection that was being raised because the additional cases weren't identified until the time of the sentencing memo. My question was that in JA 112, we did not object based on seeing that we had already had four predicates. Yes. And I acknowledge that as well. But I think in Rumbling. Which would go to what Judge Gregory is saying, that you didn't object because you thought you were fine with the predicates that you already had. And I don't know if that's good cause to give you a redo. So I don't think it's a redo. It was a continuance. So I think this goes to Judge Agee's question. That's a redo system. It was continued for what? So you could go back and redo it. So you could go back and add the other predicate, giving him an opportunity. I agree with you that Judge gave him notice. My concern is not the notice after you all failed to object. So my concern is the notice, is that you all had an opportunity to object beforehand and you didn't, and then you go and you say I need a continuance because we need to redo it so we can add this back in. Actually, you didn't ask for a continuance. The judge gave it because she thought that was the appropriate thing to do to give him an opportunity to respond. You all just wanted to change it on the spot. That's actually not quite right. What the prosecutor said when they raised this predicate was the defense would need a continuance in order to properly address that as a predicate offense. And if you look at the district court docket, it was docketed that as an oral motion for a continuance that was made by the government that was then granted by the district court. So the government made clear in raising this predicate at the same time that they raised it at JA 110, in order for it to be considered, the defendant would need a continuance. But it wasn't raised until after you lost motion as to the other two predicates. That is right. I do not dispute that. Certainly, yes. But I think in order for this court to find that that was an error, you would need to be finding that the district court abused its discretion by allowing the government to raise this objection at the time of sentencing. Rule 32 allows an objection to be raised any time before a sentence is imposed for a good cause. Good cause. And the district court... I haven't heard any good cause. That's why I'm asking you. What is the good cause other than we made a mistake? So that is the good cause. The good cause is that the circumstances of the sentencing changed. It wasn't just that it was a mistake. It was that the circumstances... What changed? You already knew about the predicate offense. Nothing changed. It was cited in the PSR. Sure. So I recognize I only have a few minutes left. So if it's all right, I'd like to turn to the issue of harmless error. Because I think here, as this court said in Dix, even if there was an error, we need to look at whether it was harmless. And so even if it was an error for the district court to allow the government to raise an untimely objection, there was no prejudice to the defendant because he received the continuance, he received an amended PSR, he received his opportunity to respond. As his defense counsel said when they reconvened for the continued sentencing hearing, he said, you know, my client would like to raise an objection based on the fact that the government shouldn't have been able to raise this at the sentencing hearing. But the defense counsel said he had a difference of opinion with his client on that issue because he did receive the amended PSR, the opportunity to respond, and the opportunities to provide supplemental briefing. So even if there was a procedural error here, it did not prejudice the defendant. And it was harmless with respect to the procedure that was used for Mr. Melvin's sentencing. It was harmless? He didn't get more time? You're saying he didn't get more time because you were allowed to get the one more you needed? So the error, you need to look at... Are you arguing that it didn't have any impact, the fact that you were able to get what you didn't have and decided not to put in, that had no impact on how he was sentenced? I just want to make sure that the government is arguing that before us. Is that your argument? So the argument is the same as it was in Dix. I don't want to talk about Dix. I'm talking about you in this case right here. Are you arguing that that had no impact at all on his sentence, the fact that the door was opened for you after your mistake? I'm not arguing that it had no impact on his sentence. Isn't that the basis of harmlessness? You need to look at the error itself. The error was a procedural error. I need to look at what? What are you saying I need to look at? So if we're assuming that there was an error, because we're now talking about harmless errors, so assuming that there was an error, you need to look at whether it was harmless. The error was a procedural error with respect to the timeliness of the notice. And as the court said in Dix, if a defendant, even if the notice is untimely, if he receives the opportunity to... I don't know if that's necessarily the error. The error is that you all did not get under 32F. There is no explanation or no good cause finding as to why you were allowed to go back and do a redo. Which would be different from Dix. That is a bit different than Dix, but in terms of I think the actual error, the error that Melvin is arguing under Hodge is about the notice and the opportunity to respond. And so that's where the fact that he here did receive notice before being sentenced and had the opportunity to respond was harmless with respect to the procedure that was used for his sentencing. I think the issue about whether there was a good cause finding, certainly if there was any sort of question about that, there could even be a remand limited to an explanation of why the district court granted the continuance. So you want a notice to redo too? No, certainly I'm not asking for the remand. I'm just saying if the court was concerned about that, that would be an option. All right. Thank you, counsel. Thank you. We'd ask the court to affirm. Thank you. Or dismiss the appeal. Ms. Hughes, do you have anything further? May it please the court, a few very brief points. The government admits that it deliberately and strategically chose not to raise the appeal waiver in its first substantive filings in this case. That should be dispositive of the appeal waiver issue right there. Why do you say strategically? I mean, they had more than they needed and they lost one. How do you say that this is deliberate and strategic? Ms. Roberts just told you that they were trying to avoid additional litigation on the appeal waiver and that's the deliberate and strategic reason why they didn't include it. They wanted a one and done on the substantive issue, and so she said that's why we deliberately and intentionally and strategically chose not to include it in our first substantive response. Right. Because she said it would be messy with all these other New York law and all those things like that. Correct. Right. That's what she said. Yeah. Additionally, the district court never found that there was good cause, and, Your Honor, as Judge Benjamin pointed out over and over again, there's no good cause here except we goofed. We forgot. We didn't bother to raise additional predicates. And the error is not timeliness per se and alone. It is that the government gets to raise a new predicate later on in a situation in which the defendant would never be allowed to. If the defendant were making the same arguments about good cause that the government was making today, the government would be jumping up and down and complaining to the end of the world about how the defendant should have known better and had plenty of opportunities to raise it, et cetera, et cetera. And so we believe that the error is not harmless, and we urge you to reverse, vacate, and remand for a new sentencing without ACCA under Hodge and Winbush. Thank you very much, Your Honor. Thank you. Just as we know that you were caught upon it, on behalf of the Fourth Circuit, I want to thank you for helping us in these cases, difficult cases, and we appreciate it very much. And Ms. Robbins, of course, we recognize your able representation in the United States. We'll come down and get counsel to proceed to our next case.
judges: Roger L. Gregory, G. Steven Agee, DeAndrea Gist Benjamin